UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD A. SCHARP, JR.,

        Petitioner,                                              Hon. Ellen S. Carmody

v.                                                                        Case No. 1:06-CV-438

UNITED STATES OF AMERICA,

        Respondent.

_____/


### ORDER

This matter is before the Court on Petitioner's <u>Motion and Brief for Relief Pursuant to</u> <u>28 U.S.C. § 2255</u>. (Dkt. #1). Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief," the Court shall summarily dismiss the petitioner's motion for relief. Upon review of Petitioner's request for relief, it plainly appears that he is not entitled to relief. Accordingly, for the reasons discussed herein, Petitioner's request for relief is **denied**.


### BACKGROUND

On the evening of January 29, 2005, Petitioner went to the Little River Casino and Resort, in Manistee Township, Michigan. (Dkt. #66). Later in the evening, after Petitioner had consumed several beers and mixed drinks, a casino official instructed Petitioner that he was not permitted to consume any additional alcohol. Immediately after receiving this instruction, however, Petitioner began

Dockets.Justia.com

consuming yet another beer.  Accordingly, a casino official approached Petitioner and instructed him to surrender his beer.  Petitioner refused, at which point the tribal police were notified.  *Id.*

Two tribal police officers arrived soon thereafter and instructed Petitioner to surrender his beer.  (Dkt. #64-66).  Petitioner refused this request and the tribal officers' subsequent requests for compliance were met by Petitioner with defiance and profanity.  After it was clear that Petitioner was unwilling to comply, the tribal officers (having determined that Petitioner was intoxicated) instructed Petitioner that he was under arrest for disorderly conduct.  Rather than comply with the officers' instruction to submit to arrest and exit the casino, Petitioner forcibly resisted the officers.  Petitioner continued to resist the officers' instructions, forcing them to employ pepper spray to gain his compliance.  Petitioner was eventually subdued, arrested, and taken into custody.  *Id.*

The United States subsequently charged Petitioner with two criminal offenses: (1) forcibly assaulting, resisting, opposing, impeding, and intimidating law enforcement officers of the Little River Band Tribal Police, and (2) being a disorderly person, by being intoxicated in a public place, the Little River Casino and Resort, and endangering the safety of another, and committing a public disturbance.  (Dkt. #1).  Following his arraignment, Petitioner was released on bond, the conditions of which included the following: (1) Petitioner must remain in the Western District of Michigan, (2) Petitioner must not consume any alcohol, (3) Petitioner cannot enter any gaming or gambling establishment, and (4) Petitioner must "submit to urinalysis or other drug testing. . .if so directed by the Pretrial Services Officer."  (Dkt. #7).

Petitioner requested that he be permitted to participate in a pretrial diversion program.  (Dkt. #9).  The United States "agreed to recommend" Petitioner for participation in this program.  *Id.* Accordingly, the Court entered a stay "pending the outcome of the Defendant's participation in a pretrial

diversion program." (Dkt. #9-10). However, the United States Probation Department denied Petitioner's request to participate in a pretrial diversion program. (Dkt. #11). This decision was "based on results of an interview wherein it was determined that [Petitioner] failed to take an appropriate level of responsibility for his actions," as well as evidence that Petitioner "failed to abide by his bond conditions by drinking alcohol, traveling outside the District without prior approval, and entering a gambling casino." *Id.*

On August 30, 2005, a United States Probation Officer informed the Court that Petitioner "had failed to submit to urinalysis or breathalyzer tests." (Dkt. #54). On September 1, 2005, less than two weeks prior to the start of Petitioner's trial, the Court reiterated to Petitioner that pursuant to the terms of his bond he must submit to alcohol testing as required by Pretrial Services. (Dkt. #39). Petitioner was also reminded that he was not permitted to consume any alcohol. *Id.* Nonetheless, following the first day of his trial, September 14, 2005, Petitioner - by his own admission - consumed two beers during dinner. Following a jury trial, Petitioner was convicted of both charges. (Dkt. #63).

On December 20, 2005, the Court fined Petitioner $15,000 and sentenced him to a 30 month term of probation. (Dkt. #63). One of the conditions of Petitioner's probation was that he "shall be placed on home detention for a period of six (6) months," during which time Petitioner "shall wear an electronic device." The Court further determined that Petitioner "shall participate in a program of testing and treatment for substance abuse, as directed by the probation officer, until such time as [Petitioner] is released from the program by the probation officer, and shall pay at least a portion of the cost according to his ability as determined by the probation officer." *Id.*

On April 18, 2006, Petitioner moved the Court to modify the terms of his probation. (Dkt. #67). Specifically, Petitioner requested that the Court "terminate the condition of his probation

requiring home detention with electronic monitoring." *Id.* The United States opposed Petitioner's request, asserting that Petitioner had violated the terms of his probation. (Dkt. #70). Specifically, the United States alleged that Petitioner, due to his "combative and obstructive behavior," was "involuntarily terminated" from the substance abuse program in which he was participating. Accordingly, the Unites States moved to revoke Petitioner's probation. *Id.* On May 10, 2006, the Court held a hearing on the parties' respective motions.

Amber Ligon, a counselor with Addiction Treatment Services (ATS), testified that in January 2006 she conducted an assessment of Petitioner to determine whether it would be appropriate to require him to participate in substance abuse treatment. (Hearing Transcript, May 10, 2006, 13-15). Ligon's initial conclusion was that Petitioner did not require such treatment. *Id.* at 15. However, Ligon subsequently learned that Petitioner had failed to disclose to her his complete criminal history. *Id.* at 15-16. Accordingly, Ligon reassessed Petitioner and his potential need for treatment. *Id.* at 16-17. Ligon concluded that Petitioner "was borderline meeting alcohol abuse, that he presented with narcissistic and antisocial traits." *Id.* at 17. With respect to the criminal offenses presently at issue, Ligon observed that Petitioner "minimized, rationalized, justified, downplayed, really felt that people were. . .out to get him." *Id.* Accordingly, Ligon concluded that Petitioner would benefit from participation in behavioral cognitive therapy. *Id.* at 17-18.

Petitioner soon thereafter began participating in therapy with Daniel Miller. *Id.* at 49-51. However, questions arose regarding whether Petitioner's insurance would cover the cost of these therapy sessions or whether Petitioner would be required to pay these costs himself. *Id.* at 6-8, 36-41. Tammara Sanchez, the billing coordinator for ATS, testified that she communicated with Petitioner and his insurance provider in an attempt to resolve the matter. *Id.* at 36-41. Petitioner's insurance provider

eventually determined that it would only cover the costs for services provided after April 11, 2006.  *Id.*

Thus, Petitioner would be responsible for paying the costs of the approximately ten therapy sessions in

which he had participated prior to April 11, 2006.  *Id.* at 5, 36-41.  When Sanchez informed Petitioner

of his insurance provider's decision, Petitioner became "angry and upset."  *Id.* at 40.  Rather than accept

the situation, or discuss the matter with somebody else as Sanchez recommended, Petitioner became so

"irate" with Sanchez that she "felt threatened."  *Id.* at 40-41.

Sanchez then informed Miller that she "never wanted to deal with [Petitioner] again."

*Id.* at 51.  Miller's supervisor learned of Petitioner's treatment of Sanchez and determined that Petitioner

"was a safety concern and that. . .she did not want him to be part of treatment in [ATS]."  *Id.*  She "felt

that the safety of the staff at ATS may be in jeopardy because of the demeanor and possibly some anger

issues that [Petitioner] displayed."  *Id.* at 8.  Miller notified Carl Paganelli, Petitioner's probation officer,

of the decision to terminate Petitioner's treatment with ATS.  *Id.* at 51-52.  Paganelli then notified

Petitioner that he had been terminated from treatment.  *Id.* at 8.

Following the presentation of evidence, the Court addressed Petitioner as follows:

> All right.  Thank you.  Dr. Scharp - you know, there's three purposes of
> sentence, as I see it, and one is rehabilitation and one is detrren[ce] and
> one is punishment.  And I know that you must be aware I was urged very
> strongly in the beginning to sentence you to a year of custody.  And I had
> heard enough about your skills as a doctor and the respect in which you
> were held that I went for deterrence and rehabilitation.  And I - I don't
> mean to underestimate the burden of being on tether, but you've been
> given breaks throughout this case.  I mean, I can't - and I've given you
> the benefit of the doubt at every turn.  And I - it's obvious I'm not going
> to convince you that you have an alcohol problem.  I think being a person
> and drinking 11 drinks in the night and insulting people and refusing to
> leave when you are asked is an alcohol problem.  And, you know, this
> may be a snapshot, but - I don't expect to convince you of that.  And a
> number of other folks have told you that they don't think you have one.
> So, okay, I accept that.

But, I am going to sentence you to three months in custody and no supervision after that because I don't think supervision has done you any good. I don't think it is going to do you any good. I have no - despite the fact that you think people are after you, why would I be after you? I - the best thing in my life would have been if I had never seen you again. Not to rude about it, but why would I go after you? I have no reason for it. And I - and I've given you every break and I just - that's my resolution to this to this situation. No supervision, no more tether, three months of custody starting today.

*Id.* at 67-68.

The following exchange then occurred between the Court and the parties' attorneys:

| | |
|---|---|
| Mr. Yates: | Your Honor, may I ask one question about the custodial arrangement? |
| The Court: | Yes. |
| My. Yates: | There is a jail up north, I think, that contracts with Grand Traverse. |
| Mr. Davis: | Manistee County. |
| Mr. Yates: | Manistee County? |
| Mr. Davis: | There's a jail there in Manistee. |
| Mr. Yates: | Oh, okay, but there's - there's a jail up north - |
| Mr. Davis: | I don't know if you guys (inaudible). |
| Mr. Yates: | Would the Court consider a work release program? |
| The Court: | I have considered that and I consider that a - something along the lines of rehabilitation and deterrence and I - no, I'm not going to. And I - you have done a fabulous job for your client, Mr. Yates. I'm sure you've given him the right advice at every turn but apparently he's not listening. And I just want this over with. I'm sure you want it over with. And no |

> more supervision, no more tether, three
> months custody. This matter is adjourned.

*Id.* at 68.

Accordingly, the Court entered an Amended Judgment revoking Petitioner's term of probation and remanding him to the custody of the United States Bureau of Prisons for a three month term of imprisonment. (Dkt. #75). Petitioner is presently confined at the Metropolitan Correctional Center in Chicago, Illinois. (Dkt. #78).

Barely one month later, Petitioner initiated the present action requesting "an amended judgment that includes, as part of the three-month custodial sentence, a recommendation that the sentence be served at the Grand Traverse County Jail with work release privileges." (Dkt. #1). In support of this motion, Petitioner asserts that his counsel rendered ineffective assistance at the May 10, 2006 motion hearing described above. *Id.*

## ANALYSIS

To obtain the requested relief, Petitioner must demonstrate that his sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Petitioner must demonstrate "the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence" on the Court's determination. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). Moreover, relief under § 2255 "is warranted only where a petitioner has shown a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)).

Petitioner is entitled to an evidentiary hearing in this matter "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see also*, *Kumar v. United States*, 163 Fed. Appx. 361, 365 (6th Cir., Jan 5. 2006) ("no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact"); *Cochran v. United States*, 153 Fed. Appx. 366, 369 (6th Cir., Oct. 28, 2005) ("[o]rdinarily, a material factual dispute must be shown to warrant an evidentiary hearing"). Furthermore, where the judge resolving the § 2255 motion conducted the proceedings implicated therein, the judge "may rely on [her] recollections of [such proceedings] in ruling on the collateral attack." *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Petitioner's motion presents no factual disputes. Moreover, as previously noted, the record in this matter makes plain the conclusion that Petitioner is not entitled to relief. Thus, an evidentiary hearing is unnecessary.

Petitioner asserts that he is entitled to relief because his counsel rendered ineffective assistance at the May 10, 2006 motion hearing. Specifically, Petitioner asserts that his counsel was ineffective for failing to present the Court with the affidavit (submitted with the present motion) of Burton O. Parks. (Dkt. #78). In his affidavit, Mr. Parks asserts that Petitioner's absence from his position with the West Shore Medical Center "threatens the health, safety and welfare of the local populace West Shore Medical Center serves." Petitioner further asserts that his counsel was ineffective for failing "to explain in clear terms that the Bureau of Prisons could have designated Dr. Scharp to serve his three-month prison term at the Grand Traverse County Jail, which has a federal contract for prisoners that includes a work-release component." Petitioner asserts that due to his attorney's ineffectiveness,

the Court "was deprived of significant information that could have affected this Honorable Court's pronouncement of Dr. Scharp's sentence." *Id.*

To prevail in this matter Petitioner must first establish that his attorney's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Accordingly, it must be demonstrated that counsel's actions were unreasonable under prevailing professional norms. *Id.* at 688. Petitioner must further establish that his attorney's performance was prejudicial in that it denied him the right to a fair proceeding. *Id.* at 687. This is a heavy burden for Petitioner to meet, because he must establish that his counsel's performance was "so <u>manifestly</u> ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*), *cert. denied*, 113 S. Ct. 2969 (1993) (emphasis in original).

As the Court has previously indicated, Petitioner's counsel has ably represented Petitioner in this matter. That counsel is willing to now assert that his representation was somehow deficient in an attempt to obtain some measure of relief for Petitioner is further evidence of such. The Court has reviewed the record in this matter and finds no evidence that counsel has rendered ineffective representation in this matter. Counsel has clearly articulated to the Court the potential impact to the community should Petitioner be confined and unable to perform his professional duties. However, even were the Court to find counsel acted deficiently in this instance (which it most certainly does not), the result is the same as Petitioner was in no way prejudiced by his counsel's alleged shortcomings.

In making the decision to confine Petitioner for a period of three months, the Court was well aware of the potential impact this decision may have on the community which Petitioner serves in his capacity as an emergency room physician. The affidavit executed by Mr. Parks, while not

insignificant, simply fails to inform the Court of any matter of which it was not previously aware. In fact, it was because of such concerns that the Court initially sentenced Petitioner to probation, thereby enabling him to continue serving his community while paying his debt to society. Furthermore, the Court was well aware that it would have been possible to confine Petitioner in a location sufficiently close to his place of employment to permit him to participate in a work-release program.

Thus, the Court was well aware of the information which Petitioner alleges his attorney should have previously brought to the Court's attention. However, even had counsel presented this particular information previously, the Court would still have revoked Petitioner's probation and sentenced him to a three-month term of confinement without the possibility of participating in a work-release program. As the Court indicated during the May 10, 2006 hearing, sentencing Petitioner to a term of probation (thereby permitting him to continue his employment) served the goals of rehabilitation and deterrence. As the evidence detailed above reveals, however, the Court's various attempts to deter and rehabilitate Petitioner resulted in abject failure. As the Court unfortunately concluded, it was left with only one option - punishment - which in the Court's estimation is completely inconsistent with participation in a work release program.

In light of Petitioner's demonstrated history of non-compliance with this Court's orders, granting the present motion would simply serve to confer on Petitioner a special status based on his professional position. The Court refuses to so recognize Petitioner, as such would serve no legitimate purpose. While the Court does not doubt Petitioner's skill and dedication as an emergency room physician, the potential benefit of permitting Petitioner to participate in a work release program must be balanced by the potential harm to the community - and to the integrity of the rule of law - which may result should the Court accord to Petitioner a privilege which he has not earned. Given the nature of

Petitioner's offenses, as well as his history of non-compliant behavior, the Court finds that this balance weighs heavily against Petitioner. It is Petitioner's total disregard for the rule of law, and not the actions or inactions of his counsel, that has put Petitioner in the position in which he finds himself.

In sum, for the reasons articulated herein, the Court finds that Petitioner was not deprived of his constitutional right to the effective assistance of counsel. Accordingly, Petitioner's Motion and Brief for Relief Pursuant to 28 U.S.C. § 2255, (dkt. #1), is **SUMMARILY DISMISSED** pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings in the United States District Courts.

**IT IS SO ORDERED**.

Date: June 23, 2006                          /s/ Ellen S. Carmody
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge